**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

ELLA H.,[1]
        Plaintiff,

                v.                                    Civil No. 3:21-cv-00804 (DJN)

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
        Defendant.

## REPORT AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner ("Commissioner") of

the Social Security Administration ("SSA") denying Plaintiff's application for a period of

disability and disability insurance benefits under the Social Security Act ("Act"). At the time of

her application date, Plaintiff was fifty-seven years old and previously worked as a bank teller. (R.

at 293, 339.) She alleges she is unable to work due to lumbar spinal stenosis. (R. at 321.)

On July 14, 2021, an Administrative Law Judge ("ALJ") issued a decision finding that

Plaintiff was not disabled. (R. at 14, 26.) This matter comes before the Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment,

rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of
the United States has recommended that, due to significant privacy concerns in social security
cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5
and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as
Plaintiff's social security number, the names of any minor children, dates of birth (except for year
of birth), and financial account numbers from this Report and Recommendation, and will further
restrict its discussion of Plaintiff's medical information only to the extent necessary to properly
analyze the case.

Plaintiff now seeks review of the ALJ's decision. For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 14) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 17) ("Def.'s Mem.") be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on November 21, 2018, alleging disability beginning December 13, 2016. (R. at 293.) The SSA denied Plaintiff's claim on April 8, 2019 (R. at 130) and again upon reconsideration on June 4, 2019. (R. at 147.) Plaintiff requested a hearing before an ALJ, and a hearing was held on June 9, 2020. (R. at 61-103, 193-97.) Prior to and at the hearing, Plaintiff moved to amend her alleged disability onset date to October 1, 2018. (R. at 98, 214.) On June 30, 2020, the ALJ issued a written opinion, holding that Plaintiff could perform past relevant work and was not disabled under the Act. (R. at 149-60.)

Plaintiff requested review of the ALJ's decision. On February 4, 2021, the SSA Appeals Council vacated the decision and remanded for reconsideration of two issues: (1) Plaintiff's residual functional capacity; and (2) whether Plaintiff could perform past relevant work given the newly considered residual functional capacity. (R. at 165-67.) A second hearing before an ALJ was held on June 17, 2021. (R. at 39.) At the hearing, Plaintiff renewed her motion to amend the alleged disability onset date to October 1, 2018. (R. at 45.) On July 14, 2021, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 14-26.) Plaintiff again requested review of the ALJ's decision. On October 21, 2021, the SSA Appeals Council denied the request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-6.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does

not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. *Id.* § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. *Id.* § 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. *Id.* § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 17-26.) *See* 20 C.F.R. § 404.1520(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date, October 1, 2018. (R. at 20.) At step two, the ALJ determined that Plaintiff's degenerative disc disease, asthma, and obesity constituted severe impairments pursuant to 20 C.F.R. § 404.1520(c). (R. at 20.) At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.)

Between steps three and four, the ALJ determined Plaintiff's residual functional capacity. (R. at 21.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform light work with the following limitations:

> [S]he can climb ramps and stairs frequently, but never climb ladders, ropes or scaffolds. She is unlimited in balancing, and can crouch and kneel frequently. She can stoop and crawl occasionally. She is able to perform work requiring up to occasional exposure to extreme heat, humidity, fumes, odors, dusts, gases, pulmonary irritants and poor ventilation. She is able to perform work occasionally around workplace hazards such as dangerous machinery, but never around unprotected heights.

(R. at 21.) The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. at 21.)

Based on her residual functional capacity findings, the ALJ considered at step four whether Plaintiff could perform her past relevant work as a teller or supervisory teller, at least in the manner

5

in which such work is generally performed.[3] (R. at 25.) The ALJ found that Plaintiff could perform her past work as a teller and supervisory teller as these jobs are generally performed per the Dictionary of Occupational Titles, although not as previously performed by Plaintiff, because the jobs as generally performed do not require the performance of work-related activities that are incompatible with her residual functional capacity. (R. at 25.) In so finding, the ALJ considered the testimony of a vocational expert, who opined that an individual with Plaintiff's residual functional capacity could perform the requirements of Plaintiff's past relevant work as it is generally performed. (R. at 25.) Therefore, the ALJ determined that Plaintiff was not disabled under the Act. (R. at 26.)

## IV. ANALYSIS

Plaintiff contends two issues necessitate remand. (Pl.'s Mem. at 1, 11.) First, Plaintiff argues that the ALJ improperly evaluated the opinion evidence "concerning Plaintiff's exertional impairment in standing/walking." (Pl.'s Mem. at 1.) Specifically, Plaintiff avers that the ALJ failed to explain the consistency between the exertional limitations assessed by Shawne Bryant, M.D. ("Dr. Bryant") and Spencer Feldmann, M.D. ("Dr. Feldmann"). (Pl.'s Mem. at 6.) She adds that "the ALJ's consistency analysis relied on a discussion of Plaintiff's activities" as described in the opinions submitted by Dr. Bryant and Jack Hutcheson, M.D. ("Dr. Hutcheson") but did not properly account for the extent to which Plaintiff could perform them. (Pl.'s Mem. at 6.) As a

---

[3] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. § 404.1565(a).

result, Plaintiff argues the ALJ committed reversible error by failing to evaluate the consistency among the medical opinion evidence. (Pl.'s Mem. at 6.)

Second, Plaintiff contends that the ALJ erroneously discounted her subjective complaints of pain as inconsistent with her conservative treatment, without considering the reason why she declined to seek treatment; namely, her lack of health insurance. (Pl.'s Mem. at 9-11.) To that end, Plaintiff argues that the ALJ should have considered evidence that Plaintiff and her doctor had discussed surgery. (Pl.'s Mem. at 10-11.)

Defendant responds that the ALJ's decision should be affirmed because: (1) the ALJ sufficiently addressed the supportability and consistency of the medical opinions, and substantial evidence supports the ALJ's residual functional capacity assessment; and (2) the ALJ properly considered Plaintiff's subjective complaints when evaluating Plaintiff's level of medical treatment during the relevant period. (Def.'s Mem. at 11-19.) For the reasons that follow, this Court finds that the ALJ assessed the medical opinions and Plaintiff's subjective complaints in accordance with the regulations, and substantial evidence supports the ALJ's residual functional capacity findings.

**A. Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinion Evidence.**

> *1. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017.*

Revised regulations apply to claims filed on or after March 27, 2017 that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The revised regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82

Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a), (b).

Under the regulations,[4] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. § 404.1520c. Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* § 404.1520c(b)(2). Supportability and consistency are explained in the regulations as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how

---

[4] Because Plaintiff filed her disability claim after March 27, 2017, Section 404.1520c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

"the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

2.   *Plaintiff's Treatment with Dr. Feldmann.*

Dr. Feldmann, a primary care physician, began treating Plaintiff on February 22, 2017. (R. at 501.) Plaintiff initially presented for hypertension and hyperlipidemia, and Dr. Feldmann noted that Plaintiff was "doing well and taking her medications." (R. at 503.) Plaintiff reported a history of spinal stenosis and back pain, but had no current related symptoms. (R. at 503.) She ambulated normally, had normal motor strength and tone, and denied muscle aches, weakness, or cramps. (R. at 503.)

Plaintiff next presented to Dr. Feldmann on November 7, 2017, with a "[three] day history of coughing, congestion, wheezing and shortness of breath." (R. at 498, 500.) She was prescribed medication and advised to rest. (R. at 501.) Plaintiff returned on December 11, 2017, for a wellness visit and reported feeling well despite back pain. (R. at 494, 496.) She denied muscle aches, weakness, cramps, joint pain, or difficulty walking, and was observed to be ambulating normally. (R. at 496.) However, on December 19, 2017, Plaintiff reported that her headache, cough, congestion, and sinus difficulties continued to persist, and was once again advised to continue taking medication and to rest. (R. at 493-94.)

Plaintiff continued to treat with Dr. Feldmann for sinus infection symptoms. (R. at 487.) On March 15, 2018, she reported zero out of ten pain, ambulated normally, and had normal motor strength and tone. (R. at 488, 490.) She was diagnosed with a sinus infection, prescribed an antibiotic, and advised to rest. (R. at 490.) She followed up two months later on May 15, 2018, reporting "several days of sinus congestion pain and pressure over her sinuses and postnasal drip." (R. at 484, 486.) Plaintiff had body aches, nose and sinus distress, and wheezing and shortness of

breath. (R. at 484, 486.) Two weeks later on May 30, 2018, she followed-up on these symptoms, reported zero out of ten pain, and denied having muscle aches, weakness, cramps, joint pain, back pain, or difficulty walking. (R. at 480, 483.) She ambulated normally and had normal motor strength and tone. (R. at 483.)

Plaintiff did not treat with Dr. Feldmann again until November 30, 2018, when she told him that she was "trying to get disability for her back and need[ed] forms filled out." (R. at 477.) At that time, she reported her pain as five out of ten and a history of lumbar spinal stenosis[5] and associated low back pain. (R. at 477, 479.) Dr. Feldmann summarized Plaintiff's subjective complaints as follows:

> Her symptoms improved with conservative treatment and she had been seen over the next year or so without significant problem. She elected not to see a spine surgeon and did not get physical therapy. She now is caring for her husband and finding that her back is causing increased pain and it goes down the right leg. She currently does not have insurance and would be unable to see a specialist. She has constant pain and has to walk carefully because the pain in her right leg increases when she tries to walk. It hurts to bend forward and she is unable to lift anything. She denies any specific focal weakness. She is currently [t]aking [non-steroidal anti-inflammatory drugs] for the pain but it does not help that much.

(R. at 479.)

On examination, Dr. Feldmann found Plaintiff had muscle cramps in both legs, lower back pain, and difficulty walking due to an antalgic gait involving her right leg. (R. at 479.) She had limited range of motion, with increased pain in her right leg when elevated more than forty-five degrees, and tenderness in her lower lumbar spine "with minimalist spasm of the lumbar muscles." (R. at 479.) He recommended that she "consider physical therapy or we can refer her to a spine

---

[5] The record indicates that Plaintiff was diagnosed with lumbar spinal stenosis at some time between 2014 and 2016. (*See* R. at 459-66, 479, 521-22, 641.)

surgery." (R. at 480.) After reviewing imaging of Plaintiff's lumbar spine from 2016, Dr. Feldmann opined that "[t]his problem is theoretically treatable and in my opinion it is too early to assign a permanent disability based on this. In addition, she has been seen in our office over the last year with no specific complaint of intractable back pain or focal weakness." (R. at 480.) On December 10, 2018, Dr. Feldmann completed the Physical Assessment that Plaintiff requested based upon the November 30, 2018, examination. (R. at 518-19.)

Between February 11, 2020, to May 6, 2021, Plaintiff returned to Dr. Feldmann for several conditions, including spinal stenosis. (R. at 548-727.) On August 12, 2020, Plaintiff reported that her back pain was eight out of ten. (R. at 554.) However, she returned the following day for her lab results, medication refill, and hypertension follow-up, and reported zero out of ten pain. (R. at 556, 570.) Findings from her physical examination were unremarkable, although she had muscle spasms "caused by a spinal disease" in the lumbar region. (R. at 559-60.) She returned to Dr. Feldmann's office on December 7, 2020 and January 22, 2021 for mammogram screening. (R. at 624, 627.)

Plaintiff next reported back pain and pelvic pain on March 29, 2021, noting that it had worsened over the previous three weeks and caused "near constant right sciatic pain." (R. at 639-41, 643.) She denied any injury or changes in activity, and noted that the back and groin pain worsened with movement. (R. at 641, 643.) During the appointment she indicated that, although she had previously been uninsured, she "now would like to have more done." (R. at 641.) She reported that she had been taking the prescribed naproxen and baclofen. (R. at 641.) During the visit, Plaintiff reported that her pain score was a ten out of ten. (R. at 649.) On examination, Plaintiff was "[p]ositive for back pain and myalgias," and had tenderness over the lumbar and right sciatic notch, as well as on the right groin. (R. at 641-43.) The nurse practitioner started Plaintiff

on a prescription for gabapentin, ordered updated imaging of the L2 and L3 vertebrae, and referred Plaintiff to physical therapy, noting that if the therapy was unsuccessful Plaintiff would be referred for orthopedic treatment. (R. at 643-44.) The updated imaging showed "degenerative changes and abnormal curvature of [the] spine resulting." (R. at 666.)

On April 13, 2021, Plaintiff presented to Dr. Feldmann with "lower back pain . . . [and] pain across lower back that radiates to [the] right side down into [the] right thigh down [the] right leg." (R. at 669-70.) Plaintiff denied any recent injury, reported that her pain score was a ten out of ten, and identified the pain as being located in her back. (R. at 669-71, 681.) Dr. Feldmann examined Plaintiff and found that she was positive for back pain but had not begun physical therapy despite being referred. (R. at 671-72.) Dr. Feldmann noted that Plaintiff was doing well overall, suggested that she should pursue physical therapy, and advised Plaintiff to notify him if the physical therapy did not help her. (R. at 672.) During the visit, a nurse assessed Plaintiff's activities of daily living and noted that Plaintiff did not require assistance with a variety of tasks, including feeding herself, getting out of bed, dressing, walking across the room, preparing meals, doing moderately strenuous housework such as laundry, shopping, driving, climbing a flight of stairs, and traveling to places that are outside of walking distance. (R. at 685.)

The record reflects that Plaintiff last visited Dr. Feldmann on May 6, 2021, for medication refills. (R. at 725.) The treatment notes do not indicate whether Plaintiff had begun the recommended physical therapy at that time. (R. at 726.) During the administrative hearing held on June 17, 2021, Plaintiff testified that she had begun physical therapy but that she had "not seen any results from that yet." (R. at 49.) At the time of her testimony, Plaintiff stated that she had not yet completed the physical therapy. (R. at 49.)

### 3. Dr. Feldmann's Medical Opinion.

In addition to Dr. Feldmann's treatment notes from approximately February 2017 to May 2021, the record includes Dr. Feldmann's completed medical source statement from December 10, 2018, in which he provided his medical opinion about Plaintiff's ability to do work-related activities. (R. at 518-19.) Dr. Feldmann first affirmed that Plaintiff suffered from lumbar spinal stenosis. (R. at 518.) He was then asked to assess Plaintiff's exertional limitations, including the total number of hours that Plaintiff could "stand/walk" in an eight-hour workday. (R. at 518-19.) Dr. Feldmann opined that Plaintiff was capable of standing and walking for a combined total of four hours in an eight-hour workday; sitting for eight hours; walking for one city block before requiring rest or experiencing significant pain; lifting and carrying less than ten pounds occasionally and never more than ten pounds. (R. at 518.) Although Dr. Feldmann assessed that Plaintiff did not need to take unscheduled breaks during the workday, her condition would likely cause her to be absent from work once or twice per month. (R. at 518-19.) Dr. Feldmann also indicated that Plaintiff would "seldom" have symptoms severe enough to interfere with attention and concentration, as opposed to "never." (R. at 518.) Finally, Dr. Feldmann found that Plaintiff had no manipulative limitations. (R. at 518.)

### 4. Dr. Bryant's Medical Opinion.

Plaintiff also challenges the ALJ's assessment of Dr. Bryant's medical opinion. (Pl.'s Mem. at 6-9.) On April 4, 2019, Dr. Bryant examined Plaintiff and provided her opinion about Plaintiff's ability to do work-related activities. (R. at 23, 522-27.) Like, Dr. Feldmann, Dr. Bryant affirmed that Plaintiff suffered from lumbar spinal stenosis. (R. at 522.) She then assessed Plaintiff's exertional limitations, including the number of hours that Plaintiff could stand and walk in an eight-hour workday. (R. at 524-25.) Dr. Bryant provided separate, short-answer responses

detailing Plaintiff's standing limitation, and then provided her assessed walking limitation. (R. at 525.) For the standing limitation, Dr. Bryant opined that Plaintiff "would be able to stand [twenty] minutes at a time, limited due to shortness of breath, lower back pain, and obesity. It is expected that she would be able to stand at least three to four hours in an eight-hour day with normal breaks." (R. at 525.) As for Plaintiff's walking limitation, Dr. Bryant opined that Plaintiff "would be able to walk [twenty] minutes at a time, limited due to shortness of breath, lower back pain, and obesity. It is expected that she would be able to walk at least three to four hours in an eight-hour day with normal breaks." (R. at 525.) Dr. Bryant also opined that Plaintiff could lift fifteen pounds frequently and twenty to twenty-five pounds occasionally. (R. at 525.)

5. *Analysis of the ALJ's Findings.*

In her decision, the ALJ summarized Dr. Feldmann's opinion regarding Plaintiff's standing and walking limitations: "He stated that [Plaintiff] could stand and walk for four hours in an eight hour workday, and sit for eight hours." (R. at 25.) The ALJ also summarized the other limitations in Dr. Feldmann's opinion, concluding that the opinion as a whole was "not generally persuasive." (R. at 25.) The ALJ reasoned that:

> Dr. Feldman [sic] supported his opinion with his narrative findings from his examination, but it is not generally consistent with the evidence. [Plaintiff] has degenerative disk [sic] disease and obesity, and occasional shortness of breath from asthma, but she generally ambulates without an assistive device. Nonetheless, she is able to do light cooking and household chores, and also attends church, which suggests that she can stand and walk for about six hours in an eight hour workday, and could lift twenty pounds on occasion. This would reasonably limit her to light exertion rather than the sedentary exertion Dr. Feldmann imposes. Clinicians generally do not indicate problems with [Plaintiff's] attention and concentration at appointments, contrary to the even seldom interference suggested. However, her impairments do affect her ability to climb, engage in postural tasks and work in certain environments as indicated above, and Dr. Feldmann did not account for these limitations. Therefore, the undersigned finds this opinion not generally persuasive.

14

(R. at 25.)

The ALJ also summarized Dr. Bryant's opinion regarding Plaintiff's standing and walking limitations:

> She had some loss of balance with tandem walking, and complained of pain with squatting. She had no tenderness to palpitation on examination, and straight leg raise testing was normal. Nonetheless, Dr. Bryant opined that [Plaintiff] could stand and walk for three to four hours each in an eight-hour workday, and could sit without limitation.

(R. at 24.) In addition, the ALJ reviewed the other limitations in Dr. Bryant's opinion, concluding that the opinion as a whole was "partially persuasive." (R. at 24.) The ALJ reasoned that:

> Dr. Bryant supported her opinion with her narrative findings from her examination, but it is not generally consistent with the evidence. [Plaintiff's] back impairment would limit her lifting and carrying ability more than Dr. Bryant found. Further, Dr. Bryant did not impose limitations on climbing nor on respiratory irritants, and due to [Plaintiff's] asthma and back condition, she would be limited as indicated above in these areas. Also, Dr. Bryant limited [Plaintiff] to frequent manipulative maneuvers, but examination showed only that [Plaintiff's] long fingernails prevented her from picking up coins, and she had normal grip strength, normal strength in the upper extremities and no edema in the upper extremities. These findings do not support this limitation in manipulative maneuvers. Furthermore, [Plaintiff's] treating clinician, Dr. Feldmann, stated that [Plaintiff] would have no manipulative limitations, and that [Plaintiff] could use the bilateral hands 100 percent of the workday for reaching, fine manipulations, grasping, twisting, and turning. Therefore, the undersigned finds this opinion only partially persuasive.

(R. at 24.)

Plaintiff presents a series of interrelated arguments regarding the ALJ's treatment of these medical opinions. First, Plaintiff argues that the opinions of Dr. Feldmann and Dr. Bryant regarding Plaintiff's standing and walking limitations "were consistent with each other and with the evidence[,]" and the ALJ failed to evaluate the consistency between the two. (Pl.'s Mem. at 6-

15

7.) Second, Plaintiff argues the ALJ failed to properly evaluate the consistency of these standing and walking limitations against the remaining evidence of record.  (Pl's Mem. at 7.)

As to Plaintiff's first point, Defendant responds that the regulations "do not require an ALJ to discuss the extent to which a particular medical opinion is consistent with every piece of evidence in the record. To the contrary, the new regulations are meant to reflect 'a reasonable articulation standard for determinations and decisions that does not require written analysis about how [the ALJ] considered each piece of evidence.'" (Def.'s Mem. at 13, citing 82 Fed. Reg. 5844-01, 5858.) While the ALJ evaluates a medical opinion's persuasiveness based on how "consistent [it] is with the evidence from other medical sources[,]" the "consistency factor itself does not require the ALJ to discuss *every* piece of consistent or inconsistent evidence." (Def.'s Mem. at 13, citing 20 C.F.R. 404.1520c(c)(2) (emphasis in original).) Nonetheless, the ALJ would have incurred "[a]n additional articulation requirement . . . when the ALJ finds two opinions 'equally persuasive'." (Def.'s Mem. at 13, citing 20 C.F.R. § 404.1520c(b)(3).) In this case, however, Defendant correctly points out that the ALJ did not find the opinions of Dr. Feldmann and Dr. Bryant to be equally persuasive. (Def.'s Mem. at 13.) In fact, the ALJ found Dr. Feldmann's opinion to be "not generally persuasive" and Dr. Bryant's opinion to be "only partially persuasive." (R. at 24, 25.) Moreover, Defendant contends that Dr. Feldmann's and Dr. Bryant's opinions as to Plaintiff's standing and walking limitations are not equivalent to one another. (Def.'s Mem. at 13.)

Upon review, the undersigned finds that the ALJ was not obligated to articulate the consistency between these medical opinions because the ALJ found that each was inconsistent, to varying degrees, with other substantial evidence in the record. (R. at 24-25.) Indeed, the ALJ sufficiently articulated why she found Dr. Feldmann's opinion "not generally persuasive" and Dr. Bryant's opinion "only partially persuasive" in accordance with the regulations set forth in 20

C.F.R. § 404.1520c, by using the consistency and supportability factors in addition to the other statutory considerations. (R. at 24-25.) For instance, the ALJ noted that the medical record indicated that Plaintiff could lift and carry more than Dr. Bryant found, and that Dr. Bryant did not account for Plaintiff's environmental limitations. (R. at 24.) She also pointed out that Dr. Bryant assessed Plaintiff with manipulative limitations, when the objective medical evidence showed Plaintiff consistently had normal grip strength and no edema in the upper extremities. (R. at 24.)

As for Dr. Feldmann, the ALJ noted that Plaintiff's ability to do light cooking, household chores, and attend church was inconsistent with Dr. Feldmann's assessed limitations. (R. at 25.) Further, the ALJ found that the medical record did not support Dr. Feldmann's opinions regarding Plaintiff's attention and concentration. (R. at 25.) Finally, the ALJ noted that Dr. Feldmann failed to account for certain postural and environmental limitations. (R. at 25.)

While Plaintiff concedes that the ALJ reviewed and sufficiently explained how the opinions of Dr. Feldmann and Dr. Bryant were inconsistent as to each doctor's assessed manipulative limitations, Plaintiff argues that the ALJ was required to specifically address consistency between Dr. Bryant and Dr. Feldmann with respect to the assessed standing and walking limitations. (Pl.'s Mem. at 6-9.) However, the ALJ had no such articulative duty. The fact that the opinions were consistent with one another is immaterial if both opinions are considered inconsistent with other substantial evidence in the record. *See Craig v. Chater*, 76 F.3d 545, 590 (4th Cir. 1996) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.")

Moreover, Dr. Feldmann's and Dr. Bryant's standing and walking limitations are not consistent with one another, as Plaintiff suggests. (Pl.'s Mem. at 6, 9). Indeed, Dr. Bryant restricted Plaintiff to standing and walking for "at least three to four hours" while Dr. Feldmann found

Plaintiff capable of standing and walking for a total of four hours in a day. (R. at 518, 525.) In her Reply Memorandum, Plaintiff essentially argues that, in assessing standing and walking limitations of "*at least* three to four hours," Dr. Bryant meant that Plaintiff could stand or walk for "*at most* three to four hours." (Pl.'s Reply to Def.'s Mem. Supp. Mot. Summ. J. at 2, citing R. at 525, ECF No. 19 ("Pl.'s Reply") (emphasis added).) Such interpretation defies the plain language of Dr. Bryant's opinions. Therefore, Plaintiff's argument is unavailing to the extent that it relies on the assumption that Dr. Bryant's and Dr. Feldmann's assessed standing and walking limitations are, in fact, consistent with one another. (Pl.'s Mem. at 6.)

Upon review, the undersigned finds that the ALJ sufficiently considered the limitations outlined by each doctor in accordance with the governing regulations and explained how, based on each opinions' consistency and supportability with the record, she found them "partially persuasive" and "not generally persuasive." (R. at 23-25.) Therefore, Plaintiff's argument that the ALJ failed to consider the consistency between the opinions of Dr. Feldmann and Dr. Bryant is insufficient to warrant remand.

6. *The ALJ Fairly Explained Plaintiff's Activities of Daily Living When She Evaluated the Medical Opinion Evidence.*

Next, Plaintiff challenges the ALJ's reasoning for rejecting Dr. Feldmann's opinion, arguing that the ALJ did not fully account for the extent to which Plaintiff could perform her activities of daily living. (Pl.'s Mem. at 7.) Specifically, Plaintiff takes issue with the ALJ's explanation regarding Plaintiff's ability to "do light cooking and household chores, and also attend[] church" and argues that it overstated Plaintiff's physical abilities to stand and walk. (Pl.'s Mem. at 7.) According to Plaintiff, the ALJ "appear[ed] to be referencing the quick notation in Dr. Bryant's report, commenting that Plaintiff was 'able to' cook and do light house cleaning." (Pl.'s Mem. at 7.) However, Plaintiff argues that since Dr. Bryant did not specify in her report whether

Plaintiff did these activities independently or with assistance, the ALJ was not justified in using this as a basis for "rejecting Dr. Bryant's finding [of] limited standing/walking despite cooking and light chores." (Pl.'s Mem. at 8.) Moreover, Plaintiff contends that Dr. Hutcheson, "made the same mistake as the ALJ" by relying on Plaintiff's purported ability to perform activities of daily living without fully accounting for the extent to which she can perform them. (Pl.'s Mem. at 8.) Accordingly, Plaintiff argues, the ALJ insufficiently assessed Plaintiff's standing and walking capabilities. (Pl.'s Mem. at 8.)

The undersigned finds that the record as a whole provides substantial evidence to support the ALJ's consideration of Plaintiff's reported activities of daily living. First, Plaintiff's function report and her administrative hearing testimony support the ALJ's inclusion of these examples of activities of daily living. (*See* R. at 334.) For example, when asked to "[l]ist the places [she] go[es] on a regular basis. (For example, church . . .)," Plaintiff endorsed going to church. (R. at 334.) In response to another question, Plaintiff indicated that she goes to church on a weekly basis. (R. at 334.) Additionally, Plaintiff indicated that each day she "fix[es] breakfast," and "do[es] a little housework." (R. at 330.) She stated that she prepares her own meals and listed several household chores that she was able to do. (R. at 332.) In her responses, Plaintiff qualified the extent to which she could perform these tasks. (R. at 330-32.) For instance, she specified that her daughter helped her with chores, dinner, and caring for her husband. (R. at 331.) She added that she had assistance with washing clothes, doing dishes, and changing sheets. (R. at 332.)

Accordingly, the ALJ summarized the evidence of Plaintiff's stated activities of daily living:

> [Plaintiff] testified that she has chronic back pain, and this limits her ability to sit, stand and walk for extended times. She cannot lift more than about five pounds. She has asthma with associated shortness of breath and coughing. She indicated that she spends her day watching

19

television, doing dishes, performing light household chores and reading. She is independent in self care. She drives, goes out alone and attends church on Sundays. She stated that she has no problems paying attention and can follow instructions. She does not handle stress well [Ex. 3E].

(R. at 22, citing R. at 330-37.)

Then, the ALJ analyzed these reported daily activities and found that the objective evidence did not support Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms. (R. at 23.) The ALJ provided several reasons, including the following: "[Plaintiff] was able to care for her personal needs, do light chores around the house, prepare light meals, drive, and attend church. . . . [H]er admitted ability to perform a variety of daily tasks [] suggest[s] that th[e] pain was not as severe or limiting as she claims." (R. at 23.)

Nonetheless, Plaintiff contends that her "condition worsened between June 2020 and June 2021, after the function report and opinion evidence." (Pl.'s Mem. at 8.) She points out that "at the June 2020 hearing, Plaintiff testified that her daughter had helped her out with household chores and cooking for about three years, and at the June 2021 hearing, Plaintiff testified that she had moved in with her daughter about six months prior to that hearing." (Pl.'s Mem. at 8 (citations omitted).) Plaintiff appears to suggest that this evidence is more relevant or dispositive than the evidence cited by the ALJ.

However, a review of the record shows that Plaintiff previously reported in her adult function report on March 3, 2019, that her daughter helped her with cooking and household chores for the past three years. (R. at 330-37.) Thus, Plaintiff's testimony in June 2020 on this matter did not provide the ALJ with evidence not already contained in the record. Furthermore, Plaintiff's testimony in June 2021 that she moved in with her daughter similarly illustrated that she was receiving help, which the ALJ acknowledged when she noted how Plaintiff "stated that [she] . . .

20

struggles to complete even routine daily tasks independently." (R. at 23.) Therefore, the ALJ carefully considered the full record when evaluating the extent to which Plaintiff could perform her activities of daily living and determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent" with the record. (R. at 22-23.)

Although Plaintiff may disagree with the ALJ's findings, as stated previously, the standard of review governing this court is to determine if the ALJ's findings are supported by substantial evidence in the record. In doing so, the court must examine the record, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

Contrary to Plaintiff's contention, it is clear that the ALJ utilized the record as a whole, including Plaintiff's own statements, when making her residual functional capacity assessment and in evaluating the medical opinion evidence. While Plaintiff may disagree with the ALJ's weighing of the evidence, the court finds that the ALJ did not err in doing so, and substantial evidence supports her findings.

### 7. *The ALJ Did Not Err When She Cited to the Medical Treatment Records.*

Finally, Plaintiff argues that the ALJ erred when weighing the medical opinion evidence when she improperly cited to medical treatment records outside of the relevant period. (Pl.'s Mem. at 8-9.) Specifically, Plaintiff argues that the ALJ's statement that Plaintiff "retain[ed] good strength in all areas, and usually walk[ed] with a normal gait" is not supported by the relevant evidence because the ALJ relied on treatment notes prior to Plaintiff's alleged onset date of disability. (Pl.'s Mem. at 8, citing R. at 23.) Although not specified, Plaintiff could be referring to

the following sentence from the ALJ's review of the medical evidence: "Outside of tenderness and limited range of motion, examinations of [Plaintiff] were generally unremarkable [Ex. 3F/13, 20, 23, 33]." (R. at 22 (citing R. at 483, 490, 493, 503).) While these record citations are to appointments that occurred prior to the amended alleged onset date, a review of the ALJ's opinion shows that the ALJ summarized the medical records in chronological order and considered Plaintiff's condition based on medical records after Plaintiff's amended alleged onset date of disability. For instance, the ALJ cited to a November 2018 appointment, noting "[r]arely, she exhibits an abnormal gait [Exs. 3F/9]." (R. at 22, 477-79.) Additionally, the ALJ stated that, during an appointment in August 2020, Plaintiff reported that "she was doing well and had no new problems [Ex. 10F/11]." (R. at 22, 556.) Therefore, the Court finds no error in the ALJ's citation to the medical record, and substantial evidence supports her findings.

        8.   *The ALJ Did Not Err When She Found Plaintiff Capable of Performing Light Work.*

        Plaintiff challenges the ALJ's finding that she could perform light work based on Dr. Bryant's assessed sit/stand limitations and argues the following:

> To the extent that Dr. Bryant stated Plaintiff could stand[/]walk 'at least' three to four hours, SSR 83-10 explains that the ability to frequently lift ten pounds implies frequently being on one's feet, and the 'at least' three to four hours language does not indicate Plaintiff is able to be on her feet for two thirds of a workday.

(Pl.'s Mem. at 9.) Plaintiff apparently argues that Dr. Bryant's purported four-hour standing/walking limitation was inconsistent with the lifting limitations expressed in the non-examining opinions, but that the ALJ did not consider the inconsistency among medical opinions.[6]

---

[6] Plaintiff briefly points out that neither the non-examining physicians nor the ALJ addressed Dr. Bryant's assessed standing/walking limitation of twenty minutes at a time. (Pl.'s Mem. at 9.) However, as discussed above, the ALJ not need evaluate every limitation expressed in an individual medical opinion under the source-level articulation standard in 20 C.F.R. § 404.1520c(b)(1), nor under the consistency requirement set forth in 20 C.F.R. § 404.1520c(c)(2).

As a result, according to Plaintiff, the ALJ erroneously found that Plaintiff could perform past work at the light level. (Pl.'s Mem. at 9.) Ultimately, Plaintiff avers that, "[w]ithout the ability to perform past light work, Plaintiff would be disabled under 20 C.F.R. Part 404, Subpt P, App'x 2, § 201.06." (Pl.'s Mem. at 9.) Defendant responds that "[a] limitation to four hours of standing and walking would not preclude light work such that Plaintiff would be limited to sedentary work only." (Def.'s Mem. at 16-17.) Defendant notes that the governing regulatory definition of light work "contemplates jobs that can be done while mostly seated" and that a "limitation to four hours of standing and walking therefore does not contradict the regulatory definition at 20 C.F.R. § 404.1567(b)." (Def.'s Mem. at 17.)

As summarized above, the ALJ found that Plaintiff retained the residual functional capacity to perform light work "as defined in 20 CFR 404.1567(b)" (R. at 21), which includes frequent lifting or carrying of objects weighing up to ten pounds and generally "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). Social Security Ruling (SSR) 83-10 explains that:

> 'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday. Sitting may occur intermittently during the remaining time.

Social Security Ruling (SSR) 83-10, 1983 SSR LEXIS 30, at *13, 1983 WL 31251 (Jan. 1, 1983).

Consequently, "frequent" encompasses possibilities ranging from one-third to two-thirds of an eight-hour workday, with two-thirds reflecting the high-end of the range of light work but allowing for a standing and walking limitation below that maximum. Contrary to Plaintiff's argument, Dr. Bryant's use of "at least" necessarily encompasses a one-third to two-thirds limitation. Moreover, Dr. Bryant opined that Plaintiff was capable of frequently lifting fifteen pounds. (R. at 525.) Even if Dr. Bryant limited Plaintiff to standing or walking for four hours *at*

23

*most*, it would fall within the range of light work as defined in SSR 83-10. SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). As such, the ALJ did not fail to evaluate any inconsistency between a four-hour standing and walking limitation and the ten-pound frequent lifting limitation in evaluating the medical opinions, as both limitations are consistent with the regulatory definition. *See* 20 C.F.R. § 404.1567(b).

Finally, Plaintiff argues that:

> The failure to give due consideration of the consistency between Dr. Bryant's and Dr. Feldmann's opinions limiting Plaintiff to four hours of standing/walking . . . is harmful error as the [vocational expert] testified explicitly that Plaintiff could not transfer past skills to sedentary work without a significant vocational adjustment. Without the ability to perform past light work, Plaintiff could be disabled under 20 C.F.R. Part 404, Subpart P, App'x 2, §201.06. The analysis provided by the ALJ herself is insufficient to support her decision.

(Pl.'s Mem. at 9) (internal citations omitted). This argument is likewise unavailing because it asks the Court to re-weigh record evidence and ignores the ALJ's thorough and proper analysis of the record in support of her findings of fact. The court declines to do so and finds that substantial evidence supports the ALJ's evaluation of the medical opinion evidence.

**B. Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Subjective Complaints.**

Finally, Plaintiff argues that the ALJ "neglected to account for Plaintiff's testimony at the June 2020 hearing that she had discussed surgery in 2016, but she had not been able to go back for that as she did not have the funds for such treatment . . . ." (Pl.'s Mem. at 10.) According to Plaintiff, the ALJ was required to "consider reasons for not obtaining the expected degree of treatment." (Pl.'s Mem. at 11.) Consequently, according to Plaintiff, the ALJ improperly assessed

Plaintiff's subjective complaints by concluding that Plaintiff's treatment was "conservative" without accounting for why Plaintiff declined to have surgery. (Pl.'s Mem. at 10-11.)

Defendant responds that Plaintiff's testimony about potentially undergoing surgery occurred "two years before the relevant period" and is "thus not relevant in this case." (Def.'s Mem. at 18.) Moreover, Defendant points out that Plaintiff's primary care doctor noted that, "between her 2016 diagnosis and October 2018, [Plaintiff's] 'symptoms improved with conservative treatment, and she had been seen over the next year or so without significant problem.'" (Def.'s Mem. at 18, citing R. at 479.) Nonetheless, according to Defendant, Plaintiff obtained health insurance "in 2017 and half of 2018," and reported to her doctor in May 2018 that she wanted to get "as much treatment done" before her health insurance lapsed. (Def.'s Mem. at 19, citing R. at 482.)

Under the regulations, an ALJ may consider the medications and treatments used to alleviate a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). If the claimant requires only conservative treatment, an ALJ is reasonable in holding that the alleged disability lacks the severity that the claimant alleges. *See Dunn v. Colvin*, 607 F. App'x 264, 274-75 (4th Cir. 2015). In assessing a claimant's allegations as to subjective symptoms, the ALJ must consider Plaintiff's "attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed." SSR 16-3p, 2017 WL 5180304, at *9. However, "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms," the ALJ may reasonably conclude the intensity, persistence, and limiting effects of her symptoms are not as great as she alleges. SSR 16-3p, 2017 WL 5180304, at *9. The ALJ is not allowed to reject a claimant's allegations as to the intensity, persistence, and limiting effects of her impairments based

on failure to obtain or follow prescribed treatment without first "considering possible reasons [she] may not comply with treatment or seek treatment consistent with the degree of [her] complaints." *Id.* A "claimant may not be penalized for failing to seek treatment she cannot afford; 'it flies in the face of the patent purposes of the [Act] to deny benefits to someone because [s]he is too poor to obtain medical treatment that may help [her].'" *Lovejoy v. Heckler*, 790 F.2d 1114, 117 (4th Cir. 1985) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)).

Although Plaintiff argues the ALJ failed to consider her financial constraints in concluding her conservative treatment was inconsistent with her allegations, it does not appear Plaintiff's financial constraints factored significantly into her treatment during the relevant period. Although Plaintiff testified at her June 2020 administrative hearing that she was not able to "go to the doctor a lot" due to not having health insurance, she testified at her July 2021 hearing that she was completing physical therapy and continuing to take her medications as prescribed. (R. at 47, 49, 88.) As Defendant pointed out, however, Plaintiff had health insurance after the time she allegedly discussed surgery with her doctor, including when she saw Dr. Feldmann on May 30, 2018 and requested to get "as much done" prior to it lapsing. (R. at 480, 482.) Moreover, on November 30, 2018 (during the relevant period), Dr. Feldmann recorded that Plaintiff's "symptoms improved with conservative treatment and she had been seen over the next year or so without significant problem." (R. at 479.)

The ALJ did not penalize Plaintiff for failing to obtain treatment she could not afford. Instead, substantial evidence supports the ALJ's finding that Plaintiff only required conservative treatment for management of her symptoms. (R. at 23.) Moreover, the ALJ provided multiple reasons for finding Plaintiff's allegations to be inconsistent with the record and her overall treatment course to be conservative. She noted that Plaintiff treated with medication, physical

therapy, and generally had normal physical examinations. (R. at 22.) She also explained how Plaintiff complained of pain in April 2021, but was reportedly doing better at a follow-up visit. (R. at 22.) Accordingly, the ALJ noted that "no provider recommended that she pursue any more aggressive measures to control her symptoms." (R. at 23.) Therefore, given the absence of evidence suggesting that Plaintiff's treatment was more conservative than it otherwise would have been if she had greater financial resources, the ALJ did not err in discounting Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms based on her conservative treatment history.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 14) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 17) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge David J. Novak and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____  /s/ MRC

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: December 19, 2022